# Exhibit A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITED PARCEL SERVICE, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DESDNIE HESS, individually and on behalf of all others similarly situated

**FILED BY FAX**
ALAMEDA COUNTY

October 30, 2020

CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Superior Court of California, County of Alameda<br>René C. Davidson Courthouse<br>1225 Fallon St, Oakland, CA 94612 | CASE NUMBER: *(Número del Caso):*<br>RG20078425 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* Carolyn H. Cottrell; Kyle G. Bates, et al.
SCHNEIDER WALLACE COTTRELL KONECKY LLP, 2000 Powell St, Ste 1400 _____ 94608-1863; (415) 421-7100

| DATE: | Clerk, *Nicole Hall* | , Deputy |
|---|---|---|
| *(Fecha)*   October 30, 2020 | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

Carolyn Hunt Cottrell (SBN 166977)
Kyle G. Bates (SBN 299114)
Kristabel Sandoval (SBN 323714)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
kbates@schneiderwallace.com
ksandoval@schneiderwallace.com

Attorneys for Plaintiffs and the Proposed Class

**FILED BY FAX**
ALAMEDA COUNTY

October 30, 2020

CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

CASE NUMBER:
**RG20078425**

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| DESDNIE HESS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>    Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT:**<br><br>(1) Public Nuisance (Cal. Civ. Code §§ 3294, 3479, 3480, 3491, 3493)<br>(2) Unfair Competition (Cal. Labor Code §§ 17200, *et seq.*)<br>(3) Failure to Reimburse Necessary Business Expenses (Cal. Labor Code §§ 2800, 2801, 2804)<br>(4) Declaratory Judgment (Cal. Civ. Proc. Code § 1060, *et seq.*)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Desdnie Hess, by and through her undersigned attorneys, hereby brings this Class Action Complaint against United Parcel Service, Inc. (hereinafter referred to as "Defendant" or "UPS") and alleges as follows:

## I.      NATURE OF THE CASE

1.      This is a putative class action under the California Labor Code, California Civil Code, and California Business and Professions Code, arising from Defendant's pattern and practice of maintaining unsafe working conditions that expose their California employees to a high risk of contracting COVID-19,[1] a highly contagious virus that has infected at least 26.4 million people worldwide, and killed 870,000 people in a matter of months.

2.      UPS is a company that provides parcel delivery services. It has 1,800 operating facilities, at least nineteen of which are in California.  Plaintiff is informed and believes that UPS employs thousands of workers throughout California.  UPS's employees risk their own health and safety to ensure consumers receive packages, some of which include critical lifesaving drugs and medical devices, including personal protective equipment ("PPE").  *See* David Slotnick, BUSINESS INSIDER, "A UPS exec reveals how the pressures of the pandemic can make drone deliveries a reality as it starts flying medical supplies, PPE, and medicine" (Oct. 22, 2020), *available at*  https://www.businessinsider.com/ups-drone-delivery-health-pandemic-covid-19-ignition-bala-ganesh-2020-10 (last visited Oct. 27, 2020).

3.      It is critical for a company like UPS to implement proper procedures to stop the spread of COVID-19 amongst their employees and the public.  UPS employees must work at close distances in their warehouses, and interact with the public on a regular basis while making deliveries.

4.      But UPS failed to offer basic PPE to its employees while forcing them to work in situations which put them and the public they serve at tremendous risk from COVID-19.

5.      In addition to UPS's moral obligation to take reasonable steps to keep its employees (and the public they serve) safe, UPS has a legal obligation under the California Labor Code to take appropriate measures to ensure a safe and healthful workplace for its employees.

---

[1] COVID-19 is an infectious disease caused by a new coronavirus called SARS-CoV-2.  For ease of reference this will simply be referred to herein as "COVID-19."

Cal. Labor Code § 6400(a).

6.    However, UPS has instead systematically endangered its employees' health and safety daily.  Among other issues and as described in further detail in Section IV *infra*, UPS has failed to provide PPE to its employees, implement social distancing protocols in the workplace, or adopt other programs and procedures necessary to reduce its employees' risk of contracting COVID-19.  UPS has failed to comply with its obligations under the California Labor Code.

7.    Defendant's disregard for its employees' health and safety has already had dire consequences.  For example, at least three employees at a UPS distribution center in Santa Maria, California, have contracted COVID-19.  Defendant continues to put its employees, customers, and the public at risk by maintaining policies that prioritize profit over the safety of its workforce.

## II.    JURISDICTION AND VENUE

8.    The Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10.

9.    The Court has jurisdiction over Defendant because it is a corporation authorized to do business in the State of California and is registered with the California Secretary of State.  Defendant does sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the advertising, marketing and sale of goods and services, to render the exercise of jurisdiction over Defendant by the California court consistent with traditional notions of fair play and substantial justice.

10.    Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5.  Defendant employed other employees in this County, transacts business in this County, and, upon information and belief, events alleged in this Complaint occurred in this County.

## III.    THE PARTIES

11.    Plaintiff and the members of the Proposed Class are current and former non-exempt employees who worked for Defendant in California.

12.    Plaintiff Desdnie Hess is a resident of the County of Santa Barbara.  Plaintiff worked as a Local Sort Supervisor for Defendant from approximately October 2019 to May 2020.  She worked at Defendant's Distribution Center in Santa Maria, California.

13.     Defendant United Parcel Service, Inc. is a company that provides parcel delivery services. Defendant is an Ohio corporation, registered to do business in California. It may be served with process to its registered agent Corporation Services Company which will do business in California as CSC-Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## IV.     FACTUAL ALLEGATIONS

14.     Plaintiff incorporates herein by reference the allegations set forth above.

15.     Plaintiff worked as a Local Sort Supervisor for UPS from approximately October 2019 until May 2020. In that role, Plaintiff was required to make schedules for warehouse associates and to oversee and direct them while they unloaded delivery trucks, sorted packages, and re-loaded the sorted packages into semi-truck. She worked approximately five and a half hours per day, five days per week.

16.     Defendant is a company that provides parcel delivery services. It has approximately 1,800 operating facilities, at least nineteen of which are in California. Plaintiff is informed and believes that during the relevant time period of this action, Defendant has employed, and continues to employ, Plaintiff and other members of the Proposed Class throughout Defendant's California locations, including at the Distribution Center where Plaintiff worked.

## A.     The COVID-19 Pandemic

17.     On December 31, 2019, the Wuhan Municipal Commission reported a cluster of pneumonia cases in Wuhan, Hubei Province, China.   This led to the identification of a novel coronavirus called SARS COV-2.   SARS CoV-2 has caused a worldwide pandemic of the respiratory illness known as COVID-19.

18.     COVID-19 symptoms can be severe and life-threatening.   Even asymptomatic individuals – who Centers for Disease Control ("CDC") research estimates account for approximately 40% of cases  –  are 75% as infectious as symptomatic individuals and therefore are still likely to spread COVID-19.[2]   For this reason, the CDC and other health experts have

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

recommended that every individual take significant efforts to avoid close contact with others, whether those others appear to be infected or not. Similarly, experts agree that contact tracing is extremely important to contain the virus' spread. Social distancing and substantial modifications to the workflow of jobs across America are necessary to "flatten the curve" and slow the spread of the virus. Natl'l Pub. Radio, *U.S. Coronavirus Cases Surpass Summer Peak And Are Climbing Higher Fas*t (Oct. 27, 2020) *available at* https://www.npr.org/sections/health-shots/2020/10/27/928062773/u-s-cases-surpass-summer-peak-and-are-climbing-higher-fast (last visited Oct. 29, 2020).

19.     As early as April 2020, the CDC published research suggesting that a single person with COVID-19 is likely to infect five or six other individuals absent aggressive physical distancing practices.[3] The CDC also reported that superspreading events, where one individual alone may infect dozens of others, are likely in crowded environments.[4] Symptoms may appear as early as two or as late as fourteen days after initial exposure. A person with COVID-19 may be contagious for 48 to 72 hours before experiencing symptoms. Research suggests that people may be most likely to spread the virus to others during the 48 hours before they begin experiencing symptoms.

20.     COVID-19 is known to cause severe respiratory problems and viral pneumonia. Patients with severe symptoms may need ventilators to survive. COVID-19 patients may at first seem stable, but then rapidly go into complete respiratory arrest, meaning they are unable to breathe at all. This is known as acute respiratory distress syndrome, and means, essentially, that the lungs are filled with fluid. One respiratory therapist described witnessing even relatively young, otherwise healthy COVID-19 patients "essentially drowning in their own blood and fluids because their lungs [we]re so full."[5] For those fortunate enough to survive this experience, COVID-19 often causes long-term lung damage.

---

[3] *See* "High Contagiousness and Rapid Spread of Severe Acute Respiratory Syndrome Coronavirus 2," Steven Sanche, Yen Ting Lin, Chonggang Xu, Ethan Romero-Severson, Nick Hengartner, and Ruian Ke, https://wwwnc.cdc.gov/eid/article/26/7/20-0282_article?deliveryName=USCDC_333-DM25287.
[4] https://wwwnc.cdc.gov/eid/article/26/6/20-0495_article.
[5] https://www.propublica.org/article/a-medical-worker-describes--terrifying-lung-failure-from-covid19-even-in-his-young-patients.

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

21.     COVID-19 may also cause, *inter alia*, acute kidney damage, blood clots, multi-system organ failure, swollen toes, loss of taste and smell, strokes, cardiac injuries and arrest, nervous system damage, and death.   COVID-19 survivors may experience long-term health complications beyond just lung damage, including limb amputation in the case of severe blood clots, heart damage, and neurocognitive and mental health effects.

22.     The COVID-19 pandemic has severely affected the mental health of many Americans as well, with nearly half of adults in the United States reporting high levels of stress due to COVID-19.   Essential workers and their families, who are at heightened risk of contracting the virus, experience significant anxiety and trauma from potential exposure to the life-threatening condition.   Panic attacks are common among those who are infected and those who fear becoming infected.[6]

23.     The World Health Organization ("WHO") writes that "ALL workplaces" (emphasis in original) should implement "physical distancing of at least 1 metre [sic.] or more according to the national recommendations."  World Health Org., *What Key Measures To Protect Against COVID-19 In ALL Workplaces?*, *available at* https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-health-and-safety-in-the-workplace (last visited Oct. 29, 2020).   The best ways to do that are by limiting human-to-human contact (including through physical distancing) and by taking other preventative measures, such as the use of PPE and frequent handwashing and sanitization of physical objects.   The CDC and Cal/OSHA in conjunction with the CDPH have provided additional workplace-specific guidelines, which are discussed in detail *infra* in paragraphs 36-47.

24.     On January 30, 2020, the WHO declared COVID-19 a "public health emergency of international concern."

25.     By February 24, 2020, severe outbreaks had already occurred in China, Europe, and Iran.   The next day, the CDC reported that, in their view, COVID-19 was headed towards pandemic status.   By February 27, 2020, California Governor Gavin Newsom reported that the

---

[6] *See* https://www.nytimes.com/article/coronavirus-symptoms.html; https://www.sacbee.com/news/coronavirus/article241363476.html.

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

California case count was rapidly rising, with the state monitoring at least 8,400 infected people. By March 3, 2020, the number of confirmed infections worldwide surpassed 90,000.

26.    On March 4, 2020, Governor Newsom declared a state of emergency due to COVID-19.

27.    On March 11, 2020, the WHO declared COVID-19 a pandemic.  The White House declared a national emergency within days of that announcement.

28.    On March 19, 2020, Governor Newsom issued a statewide shelter-in-place order requiring California residents to stay home.  Governor Newsom's order does not apply to "essential workers" who provide necessary services to millions of Californians.  Days later, the federal government declared COVID-19 a major disaster in California at Governor Newsom's request.  By the end of the month, the United States was reported as leading the world in COVID-19 cases, and at least 265 million United States residents were being asked or required to stay home.

29.    On May 28, 2020, the COVID-19 death toll in the United States surpassed 100,000.  Within approximately two months, the death toll surpassed 150,000.  As of September 4, 2020, there are 727,000 confirmed COVID-19 cases in California and 13,497 deaths.

30.    There is no vaccine for COVID-19, which is highly contagious and easily transmitted from person to person through respiratory droplets and other, smaller particles that can remain in the air for hours and be inhaled, or that can land in other individuals' eyes, noses, or mouths when in close contact with infected individuals.  Research shows the virus may also spread through contact with contaminated objects or surfaces.  Recent news reports also suggest individuals who recover from COVID-19 can later become re-infected.[7]

31.    On July 6, 2020, two scientists, with the explicit support of 237 colleagues, published an article emphasizing the risks of airborne spread, noting in particular that "the problem is especially acute in indoor enclosed environments, particularly those that are crowded and have inadequate ventilation"[8] – in other words, environments like Defendant's distribution

---

[7] *See, e.g.*, https://www.nbcnews.com/health/health-news/covid-19-reinfection-reported-nevada-patient-researchers-say-n1238679; https://www.nytimes.com/2020/08/24/health/coronavirus-reinfection.html.
[8] https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa939/5867798.

centers and other similar facilities.  They further noted the apparent role of airborne transmission in recent superspreading events.[9]  The authors noted that in addition to physical distancing and sanitization, attention must be paid to "provid[ing] sufficient and effective ventilation . . . supplement[ing] general ventilation with airborne infection controls . . . and avoiding overcrowding."[10]

32.    Amidst this pandemic UPS has, as a matter of policy and/or practice, systematically endangered its employees' health and safety daily, in violation of the law.  Among other issues and as described *infra* in further detail, Defendant has failed to provide sufficient PPE, implement social distancing protocols, or adopt other programs and procedures necessary to reduce their employees' risk of contracting the virus.  They have failed to respect clear health and safety guidelines, or the California Labor Code. UPS's behavior has been slow and insufficient to comply with applicable laws and appropriately protect their employees.  UPS continues to put its employees, customers, and the public at risk by maintaining policies that prioritize profit over the safety of their workforce.

**B.    Defendant Must Protect Its Employees' Health and Safety**

33.    The California Labor Code requires employers to take steps to protect workers from any safety hazard, including diseases like COVID-19, which is widespread in the community.  Applicable provisions with which Defendant has not complied, as described in further detail *infra*, include:

    i.    Section 6400, which requires that every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein;

    ii.    Section 6401, which requires that every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful and shall do every other thing reasonably necessary to protect the life, safety, and health of employees;

    iii.    Section 6402, which prohibits any employer from requiring or permitting an

---

[9] *Id.*
[10] *Id.*

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

employee to go or be in any employment or place of employment which is not safe and healthful;

 iv. Section 6403, which requires that no employer shall fail or neglect to provide and use reasonably adequate safety devices and safeguards, adopt or use reasonably adequate methods and process, or to do every other thing reasonably necessary to protect the life, safety, and health of employees;

 v. Section 6404, which requires that no employer shall occupy or maintain any place of employment that is not safe and healthful; and

 vi. Section 6407, which requires that every employer must comply with the occupational safety and health standards, within section 25910 of the Health and Safety Code, and with all rules, regulations, and orders pursuant to this division, which are applicable to his own actions and conduct.

34. General Industry Safety Orders propagated by Cal/OSHA establish minimum standards and apply to all employments and places of employment as defined by California Labor Code section 6303.  Cal. Code Regs. Tit. 8, § 3202 (1974).

35. UPS's policies and practices regarding COVID-19, described in further detail *infra*, violate the following Safety and Health Standards set forth by Cal/OSHA in the California Code of Regulations, title 8:

 i. Section 3203, which requires that all employers have a written Illness Prevention Program (IPP) to protect employees from workplace hazards and to implement measures to prevent or reduce infection hazards and provide training thereon;

 ii. Section 3366, which requires that employers provide washing facilities for maintaining cleanliness;

 iii. Section 3380, which requires that employers conduct a hazard assessment to determine if COVID-19 is a hazard in the workplace necessitating the use of PPE and, given that it was and is, provide exposed employees with properly fitting PPE;

 iv. Section 5144, which requires that employers take minimum steps to ensure safe and effective use of respirators required in the workplace due to the hazard caused

-9-

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

by COVID-19; and

    v.    Section 8414, requiring employers to provide employees who are exposed to hazards in the workplace, which cannot be eliminated through engineering and administrative controls are not effective in eliminating the hazards, with PPE including head protection, hand protection, and body protection.

36.    Cal/OSHA has provided guidance setting forth necessary measures to comply with the California Labor Code regarding health and safety, and COVID-19 specifically.[11]   At minimum, per these guidelines, employers must (1) create and implement injury and illness prevention programs to protect employees from workplace hazards, including infectious diseases; (2) establish infection prevention measures, such as encouraging sick employees to stay home, implementing social distancing protocols, establishing procedures to routinely clean and disinfect commonly touched surfaces and objects using EPA-approved disinfectants, and providing EPA-registered disposable wipes for employees to wipe down commonly used surfaces before use; (3) provide employee training; (4) provide washing facilities that have an adequate supply of suitable cleansing agents, water, and single-use towels or blowers; (5) require employees to wear cloth face coverings, as mandated by the State of California; and (6) conduct a hazard assessment and then provide any necessary PPE to employees.

37.    Cal/OSHA incorporates into these directives the CDC guidelines, which include (1) creating a COVID-19 preparedness, response, and control plan; (2) conducting daily health checks; (3) conducting a hazard assessment of the workplace; (4) determining which PPE is needed for workers, and providing it; (5) encouraging employees to wear cloth face coverings in the workplace; (6) implementing social distancing policies and practices in the workplace; (7) improving building ventilation systems; (8) actively encouraging sick employees to stay home; (9) regularly cleaning and disinfecting frequently touched surfaces using products that meet Environmental Protection Agency criteria for use against SARS-Cov-2; (10) training employees

---

[11] *See* https://www.dir.ca.gov/dosh/coronavirus/Health-Care-General-Industry.html ("Workplace safety and health regulations in California require employers to take steps to protect workers exposed to infectious diseases like the Novel Coronavirus (COVID-19), which is widespread in the community.  Cal/OSHA has posted guidance to help employers comply with these requirements . . .")

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

on infection prevention strategies; (11) implementing flexible sick leave and supportive policies and practices; and (12) providing employees with disinfecting wipes.

38.     Cal/OSHA has issued additional guidelines specific to the logistics/warehousing and delivery industries.  These guidelines fall into five broad categories: (1) creating a written, workplace-specific COVID-19 prevention plan; (2) providing COVID-19-specific worker training; (3) implementing individual control measures and screening; (4) implementing cleaning and disinfecting protocols; and (5) implementing physical distancing protocols.

### a.     Cal/OSHA Guidelines: Workplace-Specific Plans

39.     Under the broader workplace-specific prevention plan guideline, Cal/OSHA directs employers to: (1) perform a comprehensive risk assessment of all work areas and work tasks; (2) designate a person at each establishment to implement the plan; (3) incorporate the CDPH Face Covering Guidance into the plan and including a policy for handling exemptions to the general requirement to wear facial coverings; (4) identify contact information for local health departments ("LHD") where workplaces are located for communicating information about COVID-19 outbreaks among workers or customers; (5) train and communicate with workers and worker representatives about the plan; (6) make the plan available to workers and their representatives; (7) regularly evaluate workplaces for compliance with the plan and document and correct deficiencies identified; (8) investigate any COVID-19 illness and determine if any work-related factors could have contributed to the risk of infection, then update the plan as needed to prevent further cases; (9) implement the necessary processes and protocols when a workplace has an outbreak, following CDPH guidelines; and (10) identify close contacts (within six feet for 15 minutes or more) of an infected worker and take steps to isolate COVID-19 positive worker(s) and close contacts.

40.     Per CDPH guidelines, when a workplace has an outbreak of COVID-19, it is necessary to: (1) designate a workplace infection coordinator to implement COVID-19 infection prevention procedures and to manage COVID-19-related issues among employees; (2) instruct employees to stay home and report to the employer if they are having COVID-19 symptoms, were diagnosed with COVID-19, or are awaiting test results for COVID-19; (3) identify contact

information for the LHD in the jurisdiction where the workplace is located; (4) notify the applicable LHD if there is a known or suspected outbreak in the workplace or if there are laboratory confirmed cases of COVID-19 at the workplace; (5) communicate with the LHD on how frequently the LHD expects updates from the employer on newly identified cases and symptomatic employees in the workplace; (6) share a roster of all employees with the applicable LHD; (7) identify additional employee cases and close contacts of cases to control further spread in the workplace; (8) notify all employees who were potentially exposed to individuals with COVID-19; and (9) determine when it is appropriate for cases and contacts of cases to return to work.

### b.  Cal/OSHA Guidelines: Illness Prevention Training

41.    For COVID-19-related worker training in the logistics/warehousing and delivery industries, Cal/OSHA directs employers to cover (1) information on COVID-19, how to prevent it from spreading, and which underlying health conditions may make individuals more susceptible to contracting the virus; (2) self-screening at home, including temperature and/or symptom checks using CDC guidelines; (3) when it is safe to return to work after receiving a COVID-19 diagnosis; (4) when to seek medical attention; (5) the importance of frequent handwashing with soap and water, including scrubbing with soap for 20 seconds (or using hand sanitizer with at least 60% ethanol (preferred) or 70% isopropanol) when workers cannot get to a sink or handwashing station; (6) the importance of physical distancing, both at home and at work; (7) proper use of face coverings; and (8) information on paid leave benefits workers may be entitled to receive that would make it financially easier to stay home.

### c.  Cal/OSHA Guidelines: Individual Control Measures and Screening

42.    Regarding individual control measures and screening, Cal/OSHA directs employers to provide temperature and/or symptom screenings for all workers in the logistics/warehousing and delivery industries who report to a facility at the beginning of their shift or who must work their shift at a facility.  Additionally, Cal/OSHA recommends providing disposable gloves where they may be helpful to supplement frequent handwashing or hand sanitizer use, for example, for workers who are screening others for symptoms or handling

commonly touched items.  Cal/OSHA's guidelines further state that employers must provide and ensure workers use all required protective equipment, including eye protection and gloves where necessary.

### d.  Cal/OSHA Guidelines: Cleaning and Disinfecting Protocols

43.    Cal/OSHA directs delivery and logistics/warehousing employers to perform thorough cleaning in high traffic areas such as break rooms, lunch areas, and areas of ingress and egress, and disinfect commonly used surfaces with EPA-approved products for use against COVID-19.  Cal/OSHA further directs employers to stagger breaks to enable physical distancing as well as frequent sanitization of restrooms.

44.    For delivery drivers specifically, Cal/OSHA directs employers to provide alternative restroom locations along drivers' routes and allow time for workers to use them, given that normally accessible restrooms on routes may be closed.  Cal/OSHA further directs employers to place protective barriers such as disposable mats and seat coverings in shared delivery vehicles.  Additionally, Cal/OSHA directs employers to provide workers with an adequate supply of materials to clean and disinfect frequently touched services of delivery vehicles, especially if they are shared.  Cal/OSHA also recommends providing lined trash receptacles to be placed in delivery vehicles to properly dispose of disinfectant wipes and other items.  Cal/OSHA guidelines also direct employers to ensure vehicles are cleaned between delivery routes.  Similarly, the guidelines state that the employer should provide employees time to implement cleaning practices before, during, and after delivery routes and that, for any cleaning assigned to a driver, s/he must be compensated for that time.  Cal/OSHA directs employers to communicate to workers where they can access soap, clean running water, and drying materials, provide alcohol-based hand sanitizers, and adjust delivery schedules to allow time for frequent handwashing.

45.    Similarly, within a facility or warehouse, Cal/OSHA directs employers to have touchable surfaces cleaned between shifts or between users, whichever is more frequent, including but not limited to working surfaces, machinery, tools, equipment, shelves, storage rooms, handles, latches and locks, and controls on stationary and mobile equipment.

### e. Cal/OSHA Guidelines: Physical Distancing Protocols

46.    Cal/OSHA directs employers to implement measures to ensure physical distancing of at least six feet between workers, including transportation personnel and workers who are loading and unloading goods at delivery facilities.   Such measures may include physical partitions or visual cues such as floor markings, colored tape, or signs to indicate where workers should stand.  Cal/OSHA guidelines further recommend adjusting meetings (e.g., safety, pre-shift, or post-shift meetings) to ensure physical distance, or even cancelling such meetings or making them remote.  Similarly, Cal/OSHA guidelines direct employers to implement policies and procedures to enable delivery workers to physically distance from customers ("contactless delivery").

47.    Within warehouses and at employers' physical facilities, Cal/OSHA directs employers to stagger or adjust shifts and breaks and use other work practices to limit the number of workers on the jobsite.  Similarly, Cal/OSHA guidelines direct employers to place additional limitations on the number of workers in an enclosed area at a given time.   In enclosed spaces where physical distancing is difficult to maintain, Cal/OSHA guidelines direct that employers should consider and implement the following hierarchy of strategies: (1) engineering controls including creating physical or spatial barriers between workers, such as Plexiglass or other sturdy and impermeable partitions; (2) administrative controls including increasing the number of shifts to reduce the number of personnel present at one time and ensure adequate physical distancing; and (3) the use of PPE, such as face shields, certain types of masks, and impermeable gloves.  Cal/OSHA further recommends closing breakrooms, using barriers, or increasing distance between tables and chairs to separate workers and discourage congregating during breaks, as well as closing common areas where personnel are likely to congregate and interact.

### C.    Defendant's Policies and Practices Endanger its Employees and Violate the Law

48.    From the beginning of the pandemic, UPS has repeatedly ignored and/or failed to implement physical and social distancing guidelines.  Physical distancing simply does not exist at Defendant's facilities, such as the distribution center where Plaintiff worked. For example, Plaintiff was required to make schedules for warehouse associates and to oversee and direct them

while they unloaded delivery trucks, sorted packages, and re-loaded the sorted packages into semi-trucks. These responsibilities required her to work in close proximity to these other employees, and Defendant took no measures to prevent the spread of disease between them. There are approximately 300 employees at the Santa Maria location, and they must regularly work side by side in the warehouse, with no social distancing protocols implemented. Consequently, employees are typically only able to be 1.5-2 feet apart from one another. Defendant has failed to stagger work shifts and employees' breaks or take other similar measures to reduce employees' exposure to drivers, other warehouse employees, and third parties. In fact, Plaintiff's schedule became busier following the onset of the COVID-19 pandemic, further increasing her contact with others.

49.    Defendant also fails to adequately sanitize its facilities or to provide adequate PPE for its employees. While drivers' trucks may have been sanitized, the common areas and bathrooms at Defendant's Santa Maria Distribution Center, where Plaintiff worked, are not cleaned sufficiently. Defendant's employees must regularly touch potentially-contaminated surfaces, pallets, and packages with no protection, such as gloves or sanitizing wipes. While UPS began providing hand sanitizer to the drivers, the internal warehouse employees did not receive any. Further, Defendant did not provide face coverings to its employees until May, and the supply ran out almost every day before all employees were able to receive them. Further, policies regarding the face masks are often not enforced.

50.    Defendant has not modified the ventilation and airflow systems at the Santa Maria facility to reduce the spread of disease, nor has Defendant provided any training or illness prevention program related to COVID-19.

51.    Based on information and belief, and given the standardized nature of UPS's practices throughout its operations, Plaintiff alleges that Defendant has similarly failed to implement adequate safety protocols and failed to provide a safe work environment throughout its facilities in California.

52.    Defendant's policies and practices throughout the pandemic have already resulted in unchecked infection.  At least three employees at the Santa Maria distribution center, where

1   Plaintiff worked for Defendant, contracted COVID-19. Management failed to take action to

2   prevent others from becoming infected.

3       53.     Upon information and belief, in response to the confirmed cases of COVID-19,

4   Defendant did not conduct contact tracing, did not identify and notify employees who had been

5   in close contact with those who were infected so they could quarantine or get tested, and expected

6   employees to continue business as usual.

7       54.     Defendant employs individuals who are at high risk of infection, severe

8   complications, and death because of age and/or underlying health conditions.  Many also must

9   come into close contacts with dependents who rely upon them for support and care and who may

10  also be vulnerable to infection.

11      55.     Defendant, as a matter of policy and practice, *inter alia*: (1) has failed to implement

12  a sufficient workplace-specific plan; (2) has not provided employees with training on COVID-

13  19 prevention; (3) is not providing temperature checks or symptom screening services; (4) has

14  failed to implement physical distancing protocols or to structure the workday and worksite in a

15  way that makes it possible; (5) fails to sanitize common areas and bathrooms with sufficient

16  regularity; (6) has failed to update its ventilation systems; and (7) has failed to provide sufficient

17  PPE.  Many UPS employees, including Plaintiff, forced to fend for themselves, have had to

18  purchase their own supplies, such as masks, hand sanitizer, and the like.  In sum, Defendant has

19  failed to follow public health guidelines or comply with the law.

20      56.     Defendant was aware of life-threatening dangers posed by exposure to COVID-19

21  by March 2020, if not earlier, including the risk that this deadly, highly contagious, easily

22  transmitted virus could spread among workers in confined indoor environments, especially if

23  potentially infected individuals—including non-symptomatic individuals—did not have

24  adequate PPE and were not properly trained and required to perform physical distancing and to

25  stay home if symptomatic or believed to have been exposed, and if equipment and common areas

26  were not regularly sanitized.

27      57.     Defendant did not provide adequate PPE, training, or sanitization, nor did it

28  institute other policies or practices that public health experts in early 2020 were urging employers

of essential workers to implement to protect works and customers from exposure to this virulent disease.

58.     Defendant operates multiple facilities throughout California.  Plaintiff is informed and believes, and thereon alleges, that the unreasonably dangerous practices and conditions described herein also exist at numerous other facilities throughout the state of California and thus threaten the health and safety of the public at or near Defendant's facilities and the surrounding communities throughout the state of California.

**D.     Administrative Remedies**

59.     On or about July 8, 2020, Plaintiff filed a complaint with Cal/OSHA, with a copy to the Labor and Workforce Development Agency ("LWDA") and Defendant, per California Labor Code section 2699.3(b).  Plaintiff's complaint to Cal/OSHA and the LWDA concerned the substance of this Complaint.

## V.     CLASS ACTION ALLEGATIONS

60.     Plaintiff brings Causes of Action One through Four as a class action on behalf of herself and all others similarly situated pursuant to Code of Civil Procedure section 382.  This action satisfies that provision's ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

61.     *Class Definition:* The Proposed Class that Plaintiff seeks to represent is defined as, and comprises, the following:

"All current and former non-exempt workers employed by United Parcel Service, Inc. throughout California any time starting four years prior to the filing of this Complaint until resolution of this action."

62.     *Ascertainability:* The Proposed Class is ascertainable because it comprises a discreet, well-defined, and objectively identifiable group, as defined above.  The Proposed Class members are easily identifiable from Defendant's business records.

63.     *Numerosity:* The Proposed Class is ascertainable because it comprises a discreet, well-defined, and objectively identifiable group, as defined above. The Proposed Class members are easily identifiable from Defendant's business records.

64.     _Numerosity_: The potential members of the class are so numerous that joinder of all the members of the Proposed Class is impracticable. Plaintiff is informed and believes that the number of Proposed Class members in California exceeds 100. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Proposed Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Proposed Class will be determined from Defendant's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Proposed Class and Defendant.

65.     _Existence and Predominance of Common Questions of Law and/or Fact_: Common questions of law and/or fact exist as to the members of the Proposed Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Proposed Class.  The common questions include the following:

i.      Whether Defendant had sufficient policies and procedures to create COVID-19 preparedness, response, and control plans/worksite-specific plans for its California facilities;

ii.     Whether Defendant had sufficient policies and procedures to conduct hazard assessments of its California worksites;

iii.    Whether Defendant failed to implement proper face covering protocols;

iv.     Whether Defendant failed to implement appropriate (or any) social/physical distancing policies and practices at its California worksites;

v.      Whether Defendant had sufficient policies and procedures to actively encourage sick employees to stay home;

vi.     Whether Defendant had sufficient policies and procedures to regularly clean and disinfect frequently touched surfaces at its California worksites using products that meet Environmental Protection Agency criteria for use against SARS-Cov-2;

vii.    Whether Defendant had sufficient policies and procedures to enable employees to regularly clean and disinfect frequently touched surfaces at its California worksites

CLASS ACTION COMPLAINT
_Desdnie Hess et al. v. United Parcel Service, Inc._

using products that meet Environmental Protection Agency criteria for use against SARS-Cov-2;

viii.   Whether Defendant had sufficient training protocols and programs for the employees at its California worksites related to COVID-19;

ix.   Whether Defendant had sufficient policies and procedures to provide employees at its California worksites with disinfectant wipes;

x.   Whether Defendant had sufficient policies and procedures to provide sanitizing products to employees at its California worksites;

xi.   Whether Defendant had sufficient policies and procedures to stagger shifts to enable social distancing at its California worksites;

xii.   Whether Defendant failed to use engineering controls, as physical barriers or ventilation upgrades, to make its California worksites safer during the pandemic;

xiii.   Whether Defendant had sufficient policies and procedures to provide, and did in fact provide, sufficient PPE to its California employees;

xiv.   Whether Defendant failed to implement proper quarantining guidelines for its California employees;

xv.   Whether Defendant failed to implement or provide symptom screening or temperature testing for its California employees;

xvi.   Whether Defendant had sufficient policies and procedures to report COVID-19 infections in its California workplaces to local health authorities;

xvii.   Whether Defendant had sufficient policies and procedures to notify employees who may have been exposed to COVID-19 in the workplace;

xviii.   Whether Defendant had sufficient policies and procedures to respond to and contain outbreaks in its workplaces;

xix.   Whether Defendant's acts, or omissions, caused its California employees to bear a heightened risk of contracting COVID-19;

xx.   Whether Defendant's acts, or omissions, caused a heightened risk of COVID-19 contraction in its California employees' communities;

-19-

xxi.    Whether Defendant's acts, or omissions, pose a public health risk to employees, customers, and members of the community;

xxii.   Whether Defendant failed to follow CDC guidelines in its California workplaces;

xxiii.  Whether Defendant failed to follow CDPH guidelines in its California workplaces;

xxiv.   Whether Defendant's acts, or omissions, constitute a public nuisance;

xxv.    Whether Defendant's policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xxvi.   Whether Defendant's policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, *et seq*.;

xxvii.  The injunctive and/or monetary relief to which Plaintiff and the Proposed Class may be entitled as a result of the violations alleged herein.

66.     *Typicality:* Plaintiff's claims are typical of the claims of the Proposed Class. Defendant's common course of conduct in failing to follow public health guidelines, failing to guard against COVID-19 outbreaks in their workplaces, and failing to implement proper COVID-19 protocols and plans in their workplaces, have caused Plaintiff and the Proposed Class to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Proposed Class.

67.     *Adequacy:* Plaintiff seeks relief for state law violations perpetrated by Defendant. In that sense, Plaintiff does not have any conflicts of interest with other Proposed Class members and will prosecute the case vigorously on behalf of the Proposed Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Proposed Class members.

68.     *Superiority of Class Action*: The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Proposed Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Furthermore,

-20-

individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

69.     *Appropriateness of Injunctive or Declaratory Relief*: Final injunctive relief or corresponding declaratory relief is appropriate respecting the Proposed Class as a whole. Defendant has acted or refused to act on grounds that apply generally to the Proposed Class, such that final injunctive relief or corresponding declaratory relief may be properly applied to the Proposed Class as a whole.

## VI.     CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Public Nuisance – Assisting in the Creation of Substantial and Unreasonable Harm to Public Health and Safety that Affects an Entire Community or Considerable Number of Persons**
**California Civil Code §§ 3294, 3479, 3480, 3491, 3493**
**California Code of Civil Procedure § 731**
**(By the Proposed Class and Against Defendant)**

70.     Plaintiff hereby realleges and reincorporates by reference the allegations set forth above as if fully set forth herein.

71.     California Civil Code § 3479 defines "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property."

72.     California Civil Code § 3480 defines "public nuisance" as any nuisance that "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

73.     To constitute a "public nuisance," the offense against, or interference with the exercise of rights common to the public must be "substantial and unreasonable." *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1103, 1105 (1997).

74.     The acts and omissions of Defendant alleged herein caused a considerable number

-21-

of persons to suffer increased exposures and risks of exposure to the COVID-19 virus, including but not limited to employees at Defendant's facilities, as well as customers, those employees' and customers' family members, the persons with whom employees and customers resided, and the persons with whom those employees and customers came into contact.  These acts and omissions substantially and unreasonably created and substantially assisted in the creation of a grave risk to public health and safety, and wrongfully and unduly interfered with Plaintiff's and the Class' comfortable enjoyment of their lives and property.  *See Cnty. of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 305-06 (2006).

75.     The acts and omissions of Defendant alleged herein substantially and unreasonably created or assisted in the creation of the spread and transmission of grave, life-threatening disease and infection, the risk of spread and transmission of grave, life-threatening disease and infection, and the actual and real fear and anxiety of the spread and transmission of grave, life-threatening disease and infection, all of which constitutes an actionable public nuisance.  *See, e.g.*, Restatement (Second) of Torts § 821B & cmt. g ("[T]he threat of communication of smallpox to a single person may be enough to constitute a public nuisance because of the possibility of an epidemic; and a fire hazard to one adjoining landowner may be a public nuisance because of the danger of a conflagration."); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1546 (2009) (secondhand smoke in condominium complex); *Atlantic Richfield Co.*, 137 Cal. App. 4th at 306.

76.     Pursuant to California Civil Code § 3493, Plaintiff and the Class have standing to maintain an action for public nuisance because the nuisance is especially injurious to Plaintiff and the other workers UPS employs in California.  Plaintiff and the Class are directly and personally exposed to dangerous working conditions at Defendant's facilities.  The dangerous working conditions are particularly harmful to Class members who are especially vulnerable due to age and/or underlying health conditions.  The Class members' potential exposure puts their loved ones and dependents at risk, some of whom may be especially at risk of severe symptoms and/or death.  The injuries of Plaintiff and the Class are different from the nonetheless serious threat and injury this public nuisance inflicts on the community, due to the nature of their work

1 and the consequences of Defendant's actions to them, their loved ones, and their communities.

2 77.   California Code of Civil Procedure § 731 and California Civil Code §§ 3491, 3493,

3 and 3495 authorize Plaintiff to bring this action for injunctive relief, equitable abatement, and

4 damages from Defendant.

5 78.   Defendant's failure to comply with minimum health and safety standards in its

6 facilities has caused, and is reasonably certain to cause, community spread of the COVID-19

7 infection.  Such community spread has not been, and will not be, limited to the physical location

8 of Defendant's facilities or to the customers or employees receiving packages originating from

9 those facilities, as infected workers have gone home and will go home to interact with their

10 family members, co-residents, neighbors, and others with whom they must necessarily interact

11 as they undertake essential daily activities such as shopping, doctor's visits, and childcare.

12 79.   This community spread has resulted in increased disease and will continue to result

13 in increased disease.

14 80.   Defendant's conduct as alleged herein unreasonably interferes with the common

15 public right to public health and safety.

16 81.   Defendant's decision to conduct business as usual without ensuring minimum

17 health and safety standards at its facilities, including meeting the CDC and CDPH guidelines and

18 other minimum public health standards necessary to stop or substantially reduce the spread of

19 COVID-19, is reasonably certain to cause further spread of COVID-19 infection and the

20 reasonable and severe fear of the further spread of COVID-19 to Plaintiff, the Class, and other

21 community members.

22 82.   If immediate injunctive relief is not granted, Plaintiff and the Class face a

23 significant risk of irreparable harm in the form of physical and emotional injuries and death from

24 Defendant's continuing creation and perpetuation of a public nuisance.  Plaintiff and other Class

25 members employed at Defendant's California facilities are vulnerable to severe bodily injury or

26 death because of their workplace exposures.  Many Class members are also vulnerable to severe

27 bodily injury or death because of age and/or underlying health conditions.  Others have family

28 members or other loved ones who face special vulnerability because of medical conditions and/or

-23-

age.  Such injuries cannot be adequately compensated through an award of damages or otherwise remedied at law.

83.    The risk of injury Plaintiff and the Class face outweighs the cost of reasonable measures included in Plaintiff's proposed injunction.

84.    Defendant is a substantial contributor to the public nuisance alleged herein.

85.    Defendant's past and ongoing conduct is a direct and proximate cause of the Plaintiff's and the Class' injuries and threatened injuries.

86.    Defendant should have known that its conduct as alleged herein would be the direct and proximate cause of the injuries alleged herein to Plaintiff and the Class.

87.    Defendant's conduct as alleged herein constitutes a substantial and unreasonable interference with and obstruction of public rights and property, including the public rights to health, safety and welfare of the Plaintiff and Class, and those who come into contact with them, whose safety and lives are at risk due to Defendant's failure to adopt and implement proper procedures for protecting workers, customers, and others from exposure to the COVID-19 virus.

88.    As a proximate result of Defendant's unlawful actions and omissions, Plaintiff and the Class have been damaged in an amount according to proof at trial.

89.    Cal/OSHA's decision to investigate the Santa Maria facility at which Plaintiff worked corroborates the claims herein.  However, that investigation only scratches the surface of the far-reaching violations occurring systematically throughout Defendant's California facilities.

90.    In addition to declaratory relief, injunctive relief, and damages as alleged herein, Plaintiffs are entitled to interest, penalties, attorneys' fees and expenses pursuant to Code of Civil Procedure § 1021.5, and costs of suit.

**SECOND CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**California Labor Code §§ 17200, *et seq.***
**(By the Proposed Class and Against Defendant)**

91.    Plaintiff hereby realleges and reincorporates by reference the allegations set forth above as if fully set forth herein.

92.    Defendant's acts and omissions constituting a public nuisance, as well as its

-24-

violations of the California Labor Code and Cal/OSHA regulations, as alleged herein also constitute unfair and unlawful business practices under California Business and Professions Code §§ 17200 *et seq.*

93.   Defendant's aforementioned acts and omissions constitute business practices in that Defendant has engaged in them repeatedly over a significant period of time and in a systematic manner, to the detriment of Plaintiff and the Class and to Defendant's economic benefit.

94.   Defendant's aforementioned acts and omissions have caused economic injury to Plaintiff and the Class, including but not limited to lost wages after being precluded from coming to work by the unsafe conditions, medical expenses, cost of healthcare supplies and PPE, and child and family care expenses.   Plaintiff for example, has incurred expenses during the pandemic when she had no choice but to purchase supplies including masks and hand sanitizer.

95.   Defendant's acts and omissions have been unlawful because they have violated the requirements of the California Labor Code, Cal/OSHA regulations, and CDPH directives. Defendant has operated its facilities, equipment, and vehicles without providing adequate and appropriate PPE, handwashing supplies, and cleaning supplies to employees; ensuring that employees properly use face coverings at all times; requiring or adopting a plan that allows maintenance of a minimum six-foot distance between individuals at all times where possible; regularly disinfecting high-touch surfaces; conducting temperature or symptom screenings at the beginning of each work shift; directing or allowing employees who have been in close contact with others who are sick or symptomatic to remain home and follow appropriate guidelines for quarantining; regularly cleaning and disinfecting commonly used surfaces and areas; cleaning and sanitizing all shared equipment and touchable surfaces between uses; providing training to employees; conducting contact tracing; notifying local health authorities and affected employees about new infections and about whether employees have come into close contact with infected individuals; creating a worksite-specific plan to prevention infections; implementing engineering controls that would help reduce infection.

96.   Defendant's actions also constitute "unfair" business practices because it has

foregone the necessary protective measures required by applicable law that could have prevented the unsafe conditions. Defendant did so to gain an unfair competitive advantage against law-abiding employers by foregoing the costs of such protective measures and requiring that business go on unabated, despite the unsafe conditions and documented infections in the workplace.

97.    Because of Defendant's unfair and unlawful business practices, Defendant has gained an unfair competitive advantage over other logistics, warehousing, and delivery service providers that adequately protect the health and safety of their employees, customers, and the public, and has reaped and continues to reap unfair and illegal profits at the expense of Plaintiff, the Class, and members of the public.

98.    Because of Defendant's unfair and unlawful business practices, Plaintiff and the Class have lost money or property, including in the form of lost wages and unreimbursed expenses.

99.    Defendant's unfair and unlawful business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, restitution, interest, penalties, attorneys' fees and expenses pursuant to Code of Civil Procedure § 1021.5, and costs of suit.

## THIRD CAUSE OF ACTION
### Reimbursement of Business Expenses
### California Labor Code §§ 2800, 2801, 2804
### (By the Proposed Class and Against Defendant)

100.    Plaintiff hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

101.    At all relevant times, Plaintiff, and members of the Class, were employees covered by Labor Code §§ 2800, 2802, and 2804.

102.    California Labor Code § 2800 provides: "An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care."

103.    California Labor Code § 2802 provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

104.   During the applicable statutory period, Plaintiff and the Class members have incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and in obedience to the directions of Defendant, for which Defendant did not reimburse Plaintiff and Class members, including but not limited to hand sanitizer and masks.

105.   Labor Code § 2804 provides: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which she is entitled under the laws of this State."

106.   Thus, regardless of any agreement signed by Class members, Defendant has engaged in illegal expense-shifting practices by failing to fully reimburse Plaintiff and the members of the Class for necessary business-related expenses and costs.

107.   Under California Labor Code §§ 2800, 2802, and 2804, Plaintiff and Class members are entitled to recover their unreimbursed expenditures and losses, interest thereon, attorney's fees, and costs of suit, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**Declaratory Judgment**
**California Code of Civil Procedure § 1060, *et seq.***
**(By the Proposed Class and Against Defendant)**

108.   Plaintiff hereby incorporates and realleges each and every paragraph of this Complaint as if the same were set forth herein.

109.   A declaratory judgment is necessary and proper in that Plaintiff contends that Defendant has committed and continues to commit the violations set forth above and Defendant, on information and belief, will deny that it has done so and/or that it will continue to do so.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Proposed Class, requests the following relief:

    a.   That the Court determine that this action may be maintained as a class action under Code of Civil Procedure section 382;

    b.   For an order appointing Plaintiff as representative of the Class;

    c.   For an order appointing Plaintiff's attorneys as Class Counsel;

d.  For preliminary and permanent injunctive relief enjoining Defendant from continuing to engage in, and from refraining from engaging in, the wrongful acts, omissions, and practices alleged herein whose commission and omission constitute a public nuisance, unfair business practice, and/or violation of the California Labor Code;

e.  For a declaration that Defendant have committed a public nuisance and unfair business practices by the wrongful acts, omissions, and practices alleged herein whose commission and omission constitute a public nuisance and unfair business practices;

f.  That the Court find that Defendant has been in violation of Labor Code sections 2800, 2802, 6400, 6401, 6401.7, 6402, 6403, and 6404;

g.  For compensatory damages in an amount to be ascertained at trial;

h.  For restitution of all monies due to Plaintiff and the Class;

i.  For civil and statutory penalties available under the law;

j.  For punitive damages pursuant to Civil Code section 3294, due to, *inter alia*, Defendant's failure to be forthcoming about infections in the workplace, failure to comply with the law and public safety standards, and disregard for the health and safety of their employees and the public.

k.  For reasonable attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5, Labor Code section 2802(c), and/or any other applicable provisions providing for attorneys' fees and costs;

l.  For prejudgment interest pursuant to Labor Code section 2802 and Civil Code sections 3287, 3288, and/or any other applicable provision providing for prejudgment interest; and

m.  For such other and further relief as this Court deems just and proper.

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

1   Date: October 29, 2020                    Respectfully submitted,

2

3

4
                                            _____
5                                           Carolyn Hunt Cottrell (SBN 166977)
                                            Kyle G. Bates (SBN 299114)
6                                           Kristabel Sandoval (SBN 323714)
                                            SCHNEIDER WALLACE
7                                           COTTRELL KONECKY LLP
                                            2000 Powell Street, Suite 1400
8                                           Emeryville, CA 94608
                                            Telephone: (415) 421-7100
9                                           Facsimile: (415) 421-7105
                                            ccottrell@schneiderwallace.com
10                                          kbates@schneiderwallace.com
                                            ksandoval@schneiderwallace.com
11
                                            *Attorneys for Plaintiff and the Proposed Class*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is

3

entitled to a jury.

4

Respectfully submitted,

5

Date: October 29, 2020

6

Carolyn Hunt Cottrell (SBN 166977)
Kyle G. Bates (SBN 299114)

7

Kristabel Sandoval (SBN 323714)
SCHNEIDER WALLACE

8

COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400

9

Emeryville, CA 94608
Telephone: (415) 421-7100

10

Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com

11

kbates@schneiderwallace.com
ksandoval@schneiderwallace.com

12

13

*Attorneys for Plaintiff and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
*Desdnie Hess et al. v. United Parcel Service, Inc.*

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Carolyn Hunt Cottrell (SBN 166977); Kyle G. Bates (SBN 299114), et al.
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell St, Ste 1400, Emeryville, CA 94608-1863

TELEPHONE NO.: (415) 421-7100    FAX NO. *(Optional):* (415) 421-7105
ATTORNEY FOR *(Name):* Plaintiff DESDNIE HESS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon St
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: René C. Davidson Courthouse

CASE NAME:
DESDNIE HESS v. UNITED PARCEL SERVICE, INC.

**FOR COURT USE ONLY**

# FILED BY FAX
ALAMEDA COUNTY

October 30, 2020

CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

CASE NUMBER:

## RG20078425

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties          d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more issues that will be time-consuming to resolve           courts in other counties, states, or countries, or in a federal
   c. [x] Substantial amount of documentary evidence                    court
                                                                    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 4
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: October 29, 2020

Kyle G. Bates
_____                    ▶ _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

*Unified Rules of the Superior Court of California, County of Alameda*

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: DESDNIE HESS v. UNITED PARCEL SERVICE, INC. | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE**
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[x] Oakland, Rene C. Davidson Alameda County Courthouse (446)
[  ] Hayward Hall of Justice  (447)
[  ] Pleasanton, Gale-Schenone Hall of Justice  (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [  ] yes  [  ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [x] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial   **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential   **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs   **[  ] Yes   [  ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [  ] Yes   [  ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

202-19 (5/1/00)

Schneider Wallace Cottrell Konecky
LLP
Attn: Cottrell, Carolyn H
2000 Powell Street, Suite 1400
Emeryville, CA  94608_____

United Parcel Service, Inc.

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Hess<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>United Parcel Service, Inc.<br><br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. <u>RG20078425</u><br><br><br>NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 12/15/2020   TIME:  03:00 PM   DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
        1221 Oak Street, Oakland

Case Management Conference:
DATE: 01/19/2021   TIME:  03:00 PM   DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
        1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

**http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  11/12/2020                    Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 11/13/2020.

By _____

Deputy Clerk



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial.  You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?**  Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

## What Are The Advantages Of Using ADR?

- ***Faster*** –Litigation can take years to complete but ADR usually takes weeks or months.

- ***Cheaper*** – Parties can save on attorneys' fees and litigation costs.

- ***More control and flexibility*** – Parties choose the ADR process appropriate for their case.

- ***Cooperative and less stressful*** – In mediation, parties cooperate to find a mutually agreeable resolution.

- ***Preserve Relationships –*** A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is The Disadvantage Of Using ADR?

- ***You may go to court anyway*** – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- ***Mediation*** – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**:  Mediators do not charge fees for the first two hours of mediation.  If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation**:  This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial and the rules of evidence are often relaxed.  Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program** (non-binding):  The judge can refer a case or the parties can agree to use judicial arbitration.  The parties select an arbitrator from a list provided by the court.  If the parties cannot agree on an arbitrator, one will be assigned by the court.  There is no fee for the arbitrator.  The arbitrator must send the decision (award of the arbitrator) to the court.  The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated.  This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

## Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services.  Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA  94702-1612
Telephone: (510) 548-2377      Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – <u>S</u>ervices that <u>E</u>ncourage <u>E</u>ffective <u>D</u>ialogue and <u>S</u>olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550
Telephone: (925) 373-1035      Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100      Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |

TELEPHONE NO.:                            FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | CASE NUMBER: |

**INSTRUCTIONS:  All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1. Date complaint filed: _____.  An **Initial Case Management Conference** is scheduled for:

Date:                            Time:                            Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

   ☐ Court mediation          ☐ Judicial arbitration

   ☐ Private mediation        ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                                    (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____

Page 1 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court, rule 3.221(a)(4)

(TYPE OR PRINT NAME)                                    (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                         (SIGNATURE OF DEFENDANT)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Carolyn Cottrell, 166977<br>Schneider Wallace Cottrell Konecky LLP<br>2000 Powell Street, Suite 1400<br>Emeryville, CA 94608<br>TELEPHONE NO.: (415) 421-7100<br>ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, Alameda County

1221 Oak Street, 3rd and 4th floors

Oakland, CA 94612

| PLAINTIFF/PETITIONER: Desdnie Hess, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: United Parcel Service, Inc. | RG20078425 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>102110 |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:

Summons, Complaint, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Notice of Hearing, Alternative Dispute Resolution (ADR) Information Packet

3. a. Party served:  United Parcel Service, Inc.

   b. Person Served: CSC **-** Lai Saevang **-** Person Authorized to Accept Service of Process

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
                Sacramento, CA 95833
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on  (date): 12/08/2020     (2) at  (time): 1:30PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

  United Parcel Service, Inc.
  under: CCP 416.10 (corporation)
7. **Person who served papers**
   a. Name:     Tyler Anthony DiMaria
   b. Address:  One Legal - P-000618-Sonoma
              1400 North McDowell Blvd, Ste 300
              Petaluma, CA 94954

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 40.00
   e I am:
      (3)  registered California process server.
         (i)  Employee or independent contractor.
         (ii)  Registration No.: 2006-06
         (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date:  12/08/2020



Tyler Anthony DiMaria

| (NAME OF PERSON WHO SERVED PAPERS) | (SIGNATURE) |
|---|---|

1   GIBSON, DUNN & CRUTCHER LLP
     RACHEL S. BRASS, SBN 219301
2     rbrass@gibsondunn.com
     JOSEPH R. ROSE, SBN 279092
3     jrose@gibsondunn.com
     555 Mission Street, Suite 3000
4     San Francisco, CA 94105-0921
     Telephone:  415.393.8200
5     Facsimile:  415.393.8306

6   Attorneys for Defendant
     UNITED PARCEL SERVICE, INC.

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| DESDNIE HESS, on behalf of herself and others similarly situated, | CASE NO. RG20078425 |
| Plaintiff, | **STIPULATION AND [PROPOSED] ORDER TO CONTINUE CASE MANAGEMENT CONFERENCE** |
| v. | Action Filed:   October 30, 2020 |
| UNITED PARCEL SERVICE, INC., an Ohio corporation, | Trial Date:     None set |
| Defendant. | |

Plaintiff Desdnie Hess ("Plaintiff") and Defendant United Parcel Service, Inc. ("UPS") (together, the "Parties"), by and through their respective counsel of record, hereby agree and stipulate as follows:

WHEREAS, on October 30, 2020, Plaintiff filed the Complaint in this action in the Superior Court of California, County of Alameda;

WHEREAS, the Complaint was served on UPS on December 8, 2020;

WHEREAS, on December 14, 2020, the Court issued an Order continuing the Complex Designation Hearing to January 19, 2020, at 3:00 p.m. in Department 23;

WHEREAS, the initial case management conference is currently scheduled for January 19, 2020, at 3:00 p.m. in Department 23;

WHEREAS, the Parties agree that it is reasonable to continue the Case Management Conference so that the Parties may further consider the factual allegations and legal issues arising out of the Complaint before meeting to confer on issues under California Rule of Court 3.724;

NOW, THEREFORE, the Parties, through their undersigned counsel, hereby stipulate, agree, and respectfully request that the Court enter an Order continuing the initial case management conference to February 23, 2021.

**IT IS SO STIPULATED.**

DATED:  December 17, 2020

GIBSON, DUNN & CRUTCHER LLP

By:   _____
                Joseph R. Rose

Attorneys for Defendant UNITED PARCEL SERVICE, INC.

DATED:  December 17, 2020

SCHNEIDER WALLACE COTTRELL KONECKY LLP

By:   _____
                Kyle G. Bates

Attorneys for Plaintiff DESDNIE HESS

Gibson, Dunn & Crutcher LLP

2

STIPULATION AND [PROPOSED] ORDER TO CONTINUE CASE MANAGEMENT CONFERENCE
CASE NO. RG20078425

1

## [PROPOSED] ORDER

2

**IT IS SO ORDERED.**

3        The case management conference previously scheduled for January 19, 2021, shall be continued

4    to February 23, 2021, unless otherwise ordered by the Court.

5

6    Date:_____, 2020

7

8                                          _____
                                                    Hon. Brad Seligman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Joseph R. Rose, declare as follows:

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, CA 94105-0921, in said County and State.  On December 17, 2020, I served the following document(s):

**STIPULATION AND [PROPOSED] ORDER TO CONTINUE CASE MANAGEMENT CONFERENCE**

on the parties stated below, by the following means of service:

> Carolyn Hunt Cottrell
> Kyle G. Bates
> Kristabel Sandoval
> SCHNEIDER WALLACE
> COTTRELL KONECKY LLP
> 2000 Powell Street, Suite 1400
> Emeryville, CA 94608

☑ **BY UNITED STATES MAIL**: I caused a true copy to be placed in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

☑ **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 17, 2020.

_____
                     Joseph R. Rose